# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

**BRITTNEY MEJICO,**            )
                                             )
     **Plaintiff,**            )
                                             )   **Case No:** 7:20CV00039
**v.**            )
                                             )
**ALBA WEB DESIGNS, LLC**            )
                                             )
**Serve: Connors and Brenke**            )
     **Registered Agent**            )
     **1700 Kraft Drive**            )
     **Suite 2410**            )
     **Blacksburg, Virginia 24060**            )
                                             )
     **Defendant.**            )

## COMPLAINT

The above-named Plaintiff, Brittney Mejico, by counsel, states as her Complaint against Defendant Alba Web Designs, LLC ("Defendant"), the following:

## INTRODUCTION

1. As recently recognized by the Supreme Court of the United States, "The Internet's prevalence and power have changed the dynamics of the national economy." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018) (noting that in 1992, less than 2 percent of Americans had Internet access whereas today that number is about 89 percent). According to 2018 polling data, 89 percent of American adults use the Internet.[1] Indeed, one federal district court has noted that "few areas are more integral

---

[1] http://www.pewinternet.org/fact-sheet/internet-broadband/ (last visited July 30, 2018). Indeed, 98 percent of adults between the ages of 18-29 use the Internet, and 97 percent of adults between the ages of 30-49 use the Internet. *Id.*

to 'the economic and social mainstream of American life,' than the Internet's websites." *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *9 (S.D.N.Y. Dec. 20. 2017); *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001) ("Computers and Internet access have become virtually indispensable in the modern world of communications and information gathering.").

    2.    According to recent U.S. Census data, approximately 8 million Americans describe themselves as disabled because they are visually-impaired.[2] Thus, depriving blind persons of equal access to commercial websites on the internet would allow American businesses to treat blind persons as second-class citizens who can be segregated from the rest of American society, which is antithetical to the very purpose that motivated Congress to enact the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.* ("ADA"), almost three decades ago, as well as the enactment of California's Unruh Civil Rights Act. "'Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.' ' " *Del-Orden*, 2017 WL 6547902, at *9 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75, 121 S. Ct. 1879 (2001) (quoting 42 U.S.C. § 12101(a)(2))). "Congress found that 'physical or mental

---

[2] In 2016, an estimated 7.7 million Americans reported having a visual disability.
http://www.disabilitystatistics.org/reports/acs.cfm?statistic=1
(last visited July 30, 2018). The statistics were calculated by the Cornell University Yang Tan Institute using the U.S. Census Bureau's 2016 American Community Survey (ACS) Public Use Microdata Sample (PUMS) data. The estimate is based on a sample of 3,085,278 persons who participated in the 2016 ACS.

disabilities in no way diminish a person's right to fully participate in *all aspects of society*, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination.'" *Del-Orden*, 2017 WL 6547902, at *9 (quoting 42 U.S.C. § 12101(a)(1)) (emphasis added in *Del-Orden*). "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'" *PGA Tour*, 532 U.S. at 675 (quoting S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.C.C.A.N. 1990, pt. 2, pp. 303, 332). To remedy these ills, "Congress provided [a] broad mandate" in the ADA to effect the statute's "sweeping purpose." *Id.* "In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would[:] 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages ***available indiscriminately to other members of the general public***'". *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (emphasis added) (quoting *Carparts Distrib. Ctr. v. Auto Wholesaler's Ass'n*, 37 F.3d 12, 20 (1st Cir. 1994)).

3.      Plaintiff is a blind individual who requires screen reading software to read website content and access the internet.  Defendant maintains its website,

500labels.com (the "Website") in such a way that it contains numerous access barriers preventing Plaintiff, and other blind and visually-impaired individuals, from gaining equal access to the Website. Defendant's denial of full and equal access to its website, and therefore its products and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act of 1990 ("ADA"), and the California Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.* ("Unruh Civil Rights Act").

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims arising under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq.*

5.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the Unruh Civil Rights Act.

6.  Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1)-(3) because Defendant's principal place of business is located in this District; a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District; and Defendant is subject to personal jurisdiction in this District.

## THE PARTIES

7.  Plaintiff is an adult resident of California. Plaintiff is *sui juris,* is permanently blind and uses a screen reader in order to access the internet and read

website content, and thus qualifies as an individual with disability as defined by the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12102(2), 28 C.F.R. 36.104. Defendant maintains the "Website in such a way that it contains numerous access barriers preventing Plaintiff, and other blind and visually-impaired individuals, from gaining equal access to the Website. Defendant's denial of full and equal access to its website, and therefore its products and services offered thereby, is a violation of Plaintiff's rights under the ADA and the Unruh Civil Rights Act.

8.     While Plaintiff genuinely wants to avail herself of Defendant's goods and services as offered on Defendant's Website, Plaintiff has a dual motivation: she is also a "tester," which one federal court has defined to be "individuals with disabilities who visit places of public accommodation to determine their compliance with Title III [of the ADA]." *Harty v. Burlington Coat Factory of Penn., L.L.C.*, Civil Action No. 11-01923, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011). Indeed, it is widely accepted that "testers" such as Plaintiff advance important public interests and should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Plaintiff has filed multiple lawsuits against various operators of commercial websites under the Unruh Civil Rights Act as part of her advocacy work on behalf of the civil rights of visually-impaired persons. Plaintiff intends to continue to engage in such advocacy work into the foreseeable future to ensure that Defendant's commercial Website and others are fully and equally enjoyable to and usable by

5

visually-impaired persons, including herself.

9. Plaintiff is informed and believes, and thereon alleges, that Defendant Alba Web Designs, LLC is a Virginia limited liability company with its principal place of business located in Blacksburg, Virginia. Plaintiff is informed and believes, and thereon alleges, that Defendant owns, operates and provides to the public the Website. The Website provides access to Defendant's array of products and services, including descriptions of its products, amenities and services, online shopping services, and many other benefits related to its products and services. The Website is a public accommodation within the definition of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181(7) and likewise is a "business establishment" within the meaning of the Unruh Civil Rights Act, California Civil Code § 51 *et seq*. The Website is a service, privilege, and advantage and accommodation of Defendant's services.

10. At all times relevant to the Complaint, Defendant was acting through its agents, servants and/or employees.

**FACTS**

11. The Internet has become a significant source of information, a portal and tool for conducting business, and a means for doing everyday activities such as shopping, banking, etc. for both the sighted and blind, and/or visually-impaired persons.

12. Blind individuals may access websites by using keyboards in conjunction

with screen-reading software that vocalizes visual information on a computer screen. Screen access software provides the only method by which a blind person may independently access the internet. Unless websites are designed to be read by screen reading software, blind persons are unable to fully access websites and the information, products and services, privileges, advantages, and accommodations contained thereon.

13. The international website standards organization, W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established, industry standard guidelines for ensuring websites are accessible to blind and visually-impaired people. These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible. These guidelines recommend several basic components for making websites accessible including, but not limited to, adding invisible alternative text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible, and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader.

14. Defendant offers the Website, which provides, as set forth above, a breadth of information concerning its products and other amenities and services, privileges, advantages, and accommodations.

15. Based on information and belief, it is Defendant's policy and practice to deny blind users, including Plaintiff, equal enjoyment of and access to the Website. Due to Defendant's failure and refusal to remove access barriers on the Website,

Plaintiff and other blind and visually impaired individuals have been denied equal enjoyment of and access to Defendant's services, advantages, privileges, and accommodations offered to the public through the Website.

16. Defendant has denied blind individuals equal enjoyment of and access to the products, services, privileges, advantages, and accommodations and information made available through the Website by preventing them from freely navigating the Website. The Website contains access barriers that prevent free and full use by Plaintiff and other blind persons using screen reading software.

17. The Website's barriers are pervasive and include, but are not limited to, the following: (1) Empty or missing form labels, which presents a problem because if a form control does not have a properly associated text label, the function or purpose of that form control may not be presented to screen reader users. Form labels provide visible descriptions and larger clickable targets for form controls; (2) Document language missing, which presents a problem because the language of the document is not identified. Identifying the language of the page allows screen readers to read the content in the appropriate language. It also facilitates automatic translation of content; and (3) Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen reader users.

18. Due to the inaccessibility of the Website, blind and otherwise visually impaired customers who use screen readers have been hindered from effectively browsing for Defendant's products, amenities and services, privileges, advantages, and

accommodations that exist online unlike sighted users. If the Website were accessible, Plaintiff would independently and privately investigate Defendant's products, services, privileges, advantages, accommodations, and amenities, as sighted individuals can and do.

19. Despite several attempts to access the Website in recent months, the numerous access barriers contained on Defendant's website have denied Plaintiff full and equal access, and deterred Plaintiff on a regular basis from accessing the Website. Similarly, based on the numerous access barriers contained on the Website, Plaintiff has been deterred from purchasing Defendant's products as Plaintiff would have been able to do by using the Website. Plaintiff continues to attempt to utilize the Website and plans to continue to attempt to utilize such Website in the near future. Plaintiff's dignitary interests as a disabled person has been harmed by Defendant's actions.

## COUNT I: Violations of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

20. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

21. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

9

22. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations"; and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden". 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii). "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." 28 C.F.R. § 36.303(a). In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

23. Defendant's Website constitutes a "public accommodation" within the meaning of 42 U.S.C. § 12181 *et seq*. Defendant generates millions of dollars in revenue from the sale of its products and services, privileges, advantages, and accommodations through its Website. The Website is a service, privilege, advantage, and accommodation provided by Defendant that is inaccessible to patrons who are visually-impaired like Plaintiff. This inaccessibility denies visually-impaired patrons full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that Defendant made available to the non-disabled public. Defendant is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*., in that Defendant denies visually-impaired customers the services, privileges, advantages, and accommodations provided by the Website. These violations are ongoing.

24. Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, in that: Defendant has constructed a website that is inaccessible to Plaintiff; knowingly maintains the website in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

25. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

**COUNT II: Violations of the Unruh Civil Rights Act,**

**California Civil Code § 51 *et seq*.**

26. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

27. California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendant is systematically violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq*.

28. The Website is a "business establishment" within the meaning of the California Civil Code § 51 et seq. Defendant generates hundreds of thousands of dollars in revenue from the sale of its goods and services in California through the Website. The Website is a service provided by Defendant that is inaccessible to patrons who are visually-impaired like Plaintiff. This inaccessibility has denied visually-impaired patrons full and equal access to the facilities and services that Defendant makes available to the non-disabled public. Defendant has violated the Unruh Civil Rights Act by denying visually-impaired customers the services and products provided by the Website. These violations are ongoing.

29. Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability in violation of the Unruh Civil Rights Act because Defendant has constructed a Website that is inaccessible to Plaintiff, knowingly maintains the Website in this inaccessible form, and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

30. Defendant is also violating the Unruh Civil Rights Act because the

conduct alleged herein likewise constitutes a violation of various provisions of the ADA, 42 U.S.C. § 12101 *et seq*. Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

31.   The actions of Defendant were and are in violation of the Unruh Civil Rights Act and, therefore, Plaintiff is entitled to injunctive relief remedying the discrimination.

32.   Plaintiff is also entitled to a preliminary and permanent injunction enjoining Defendant from violating the Unruh Civil Rights Act and requiring Defendant to take the steps necessary to make the Website readily accessible to and usable by visually-impaired individuals.

33.   Plaintiff is also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense. Plaintiff is also entitled to reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brittney Mejico prays that this Honorable Court grant the following remedies:

1.   For a judgment that Defendant violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. and the Unruh Civil Rights Act, California Civil Code § 51 *et seq*.;

2.   For a preliminary and permanent injunction requiring Defendant to take

the steps necessary to make the Website, 500labels.com, readily accessible to and usable by visually-impaired individuals;

    3.    An award of statutory minimum damages of $4,000 per violation pursuant to section 52(a) of the California Civil Code;

    4.    For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, California Civil Code § 52(a);

    5.    For pre-judgment interest to the extent permitted by law;

    6.    For costs of suit; and

    7.    A judgment for all such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ Thomas E. Strelka

Thomas E. Strelka, VA Bar No. 75488
L. Leigh R. Strelka, VA Bar No. 73355
STRELKA LAW OFFICE, PC
119 Norfolk Avenue, SW,
Warehouse Row, Suite 330
Roanoke, Virginia 24011
Phone: (540) 283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com


Scott J. Ferrell, Esq.
Victoria Knowles, Esq.
Pacific Trial Attorneys
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Phone: (949) 706-6464
Fax: (949) 706-6469
sferrell@pacifictrialattorneys.com
vknowles@pacifictrialattorneys.com

*Counsel for Plaintiff*