IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

BRITTNEY MEJICO,                           )
                                           )       Civil Action No. 7:20CV00039
       Plaintiff,                          )
                                           )       **MEMORANDUM OPINION**
v.                                         )
                                           )       By: Hon. Glen E. Conrad
ALBA WEB DESIGNS, LLC,                     )       Senior United States District Judge
                                           )
       Defendant.                          )

Brittney Mejico filed this action against Alba Web Designs, LLC ("Alba"), alleging that

Alba's website violates Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42

U.S.C. §§ 12181–12189.  The case is presently before the court on Alba's second motion to

dismiss for lack of subject matter jurisdiction and its motion for judgment on the pleadings.  For

the following reasons, both motions will be denied with respect to Mejico's claim under the

ADA.

## Background

The following facts, taken from the amended complaint, are accepted as true for purposes

of the pending motions.  See Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018) ("We accept

the facts of the complaint as true as we would in context of a Rule 12(b)(6) challenge because

defendants' motions to dismiss are facial challenges to standing that do not dispute the

jurisdictional facts alleged in the complaint."); Drager v. PLIVA USA, Inc., 741 F.3d 470, 474

(4th Cir. 2014) ("The standard of review for Rule 12(c) motions [for judgment on the pleadings]

is the same as that under Rule 12(b)(6).").

Defendant Alba is a limited liability company based in Blacksburg, Virginia. Am. Compl. ¶ 9, ECF No. 23. The company operates a website, 500labels.com (the "Website"), through which it sells personalized return address labels. Id. ¶¶ 3, 7.

Plaintiff Mejico is a blind resident of California. Id. ¶ 6. Because of her visual impairment, Mejico uses a screen reader to access the internet and read website content. Id. Screen readers assist the blind in accessing websites by vocalizing information on a computer screen. Id. ¶ 12. "Unless websites are designed to be read by screen reading software, blind persons are unable to fully access websites and the information, products and services . . . contained thereon." Id.

Mejico has attempted to utilize the Website on multiple occasions. Id. ¶ 19. However, "numerous access barriers" have prevented her from fully using the Website and completing a purchase. Id. ¶¶ 19, 21. The barriers include, but are not limited to, the following: (1) empty or missing form labels; (2) missing document language; (3) redundant links; (4) unlabeled edit fields; (5) unlabeled inks; and (6) empty links. Id. ¶ 17. Additionally, the Website "offers an order form in pdf format that is only partially readable by a screen reader" and must be printed, completed by hand, and mailed to Alba. Id. ¶ 20. Mejico is unable to complete the form without obtaining sighted assistance. Id. According to Mejico, "[t]his causes not only delay . . . on the basis of her disability, but it also causes frustration, embarrassment and disappointment" since it requires her to seek sighted assistance to complete a basic task. Id.

Mejico alleges that she genuinely wants to avail herself of the goods and services offered on the Website for both personal and professional reasons. Id. ¶ 7. Because of her vision impairment, Mejico cannot independently handwrite her address on envelopes. Id. Consequently, she prefers to use printed address labels rather than to wait for a sighted person to

2

assist her.  Id.  Additionally, as a member of the National Federation of the Blind, Mejico assists with fundraising efforts that regularly require printed labels for group mailings.  Id.  Mejico alleges that she "could, and would, use Defendant's Website to aid in these tasks if it were accessible to her."  Id.  However, "each time Plaintiff has attempted to access and complete a purchase on Defendant's Website, she has been unable to because of the accessibility barriers preventing blind users' full and equal access."  Id.

Mejico also describes herself as a "tester" who visits places to determine whether they comply with the ADA.  Id. ¶ 8.  Mejico has filed multiple lawsuits against operators of commercial websites, and she "intends to continue to engage in such advocacy work into the foreseeable future to ensure that Defendant's commercial Website and others are fully and equally enjoyable to and usable by visually-impaired persons, including herself."  Id.

## Procedural History

On January 15, 2020, Mejico filed this action against Alba, alleging violations of Title III of the ADA (Count I) and California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51–52 (Count II).  Alba subsequently moved to dismiss the case for lack of subject matter jurisdiction and for judgment on the pleadings.  Mejico opposed Alba's motions and alternatively requested leave to amend her complaint to address the standing issues raised in the motion to dismiss.

On May 12, 2020, the court conducted a hearing on Alba's motions via teleconference. During the hearing, Mejico once again requested leave to amend her complaint.  By order entered May 13, 2020, Mejico was given fourteen days to file an amended complaint.  Alba's motion for judgment on the pleadings was granted as to the state statutory claim asserted in Count II and taken under advisement with respect to the ADA claim asserted in Count I.

On May 26, 2020, Mejico filed an amended complaint against Alba. Mejico claims that "[t]he Website is a public accommodation within the definition of Title III of the ADA" and that it is unlawfully inaccessible to patrons who are visually impaired. Am. Compl. ¶¶ 9, 25. She seeks injunctive relief, in addition to costs and attorneys' fees.

In response to the amended complaint, Alba filed a second motion to dismiss for lack of subject matter jurisdiction. The case is presently before the court on that motion and the motion for judgment on the pleadings. The motions have been fully briefed and argued and are now ripe for disposition.

### **Standards of Review**

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move for dismissal for lack of subject matter jurisdiction. The United States Court of Appeals for the Fourth Circuit has explained that defendants may challenge subject matter jurisdiction in one of two ways: "facially or factually." Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017). In this case, Alba makes a facial challenge, arguing that the amended complaint fails to allege facts upon which subject matter jurisdiction can be based. Id. In that scenario, "the plaintiff is 'afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration.'" Id. (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2017)). The facts alleged in the amended complaint are accepted as true, and the motion must be denied if the pleading alleges sufficient facts to invoke the court's subject matter jurisdiction. Id.

Rule 12(c) permits a defendant to move for judgment on the pleadings. "The standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6)." Drager, 741 F.3d at 474. Thus, the court is required to accept all well-pleaded allegations as true and draw all reasonable factual inferences in the plaintiff's favor. Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014).

The motion must be denied if the amended complaint "states a plausible claim for relief." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

**Discussion**

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Discrimination is defined to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services."[1] Id. § 12182(b)(2)(A)(iii). The applicable regulations define "auxiliary aids and services" to include "screen reader software," "accessible electronic and information technology," or "other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b)(2).

In moving to dismiss the amended complaint for lack of subject matter jurisdiction, Alba argues that Mejico lacks standing to pursue her ADA claim. Alternatively, Alba argues that judgment on the pleadings is appropriate because the Website is not a "place of public accommodation" subject to Title III's requirements.

### I.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

The court will first address Alba's motion to dismiss for lack of subject matter jurisdiction. Article III of the Constitution limits the jurisdiction of federal courts to certain "Cases" and "Controversies." U.S. Const. art. III, § 2. "One element of the case-or-controversy

---

[1] Covered entities are not required to provide auxiliary aids and services if compliance would "fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(iii). At this stage of the proceedings, Alba does not argue that making the Website accessible to blind people would be an undue burden or fundamentally alter the nature of the Website or its offerings.

5

requirement is that plaintiffs must establish that they have standing to sue." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013) (internal quotation marks and citations omitted). Thus, Article III standing is a "subject matter jurisdiction issue." Beyond Sys., Inc. v. Kraft Foods, Inc., 777 F.3d 712, 715 (4th Cir. 2015).

In order to possess standing to sue under Article III, "a plaintiff must sufficiently allege the three elements identified by the Supreme Court." Hutton v. Nat'l Bd. of Exam's in Optometry, Inc., 892 F.3d 613, 619 (4th Cir. 2018). "That is, a plaintiff must allege that they have: '(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" Id. (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016)). In moving to dismiss the ADA claim for lack of subject matter jurisdiction, Alba argues that Mejico has not adequately alleged an injury in fact.

"The injury-in-fact requirement ensures that plaintiffs have a 'personal stake in the outcome of the controversy.'" Kenny, 885 F.3d at 287 (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). To satisfy this requirement, a plaintiff must allege an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Spokeo, 136 S. Ct. at 1548 (internal quotation marks omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." Id. (internal quotation marks and citations omitted). For an injury to be concrete, "it must actually exist." Id. "Concrete is not, however, necessarily synonymous with tangible, . . . [and] intangible injuries can nevertheless be concrete." Id. at 1549 (internal quotation marks and citations omitted).

When a plaintiff seeks injunctive relief, "there is the additional requirement of a 'real or imminent threat' that the party will suffer an injury in the future." Griffin v. Dep't of Labor Fed.

Credit Union, 912 F.3d 649, 653 (4th Cir. 2019) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)). Thus, Mejico "must establish an ongoing or future injury in fact." Kenny, 885 F.3d at 287; see also O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

With these principles in mind, the court proceeds to consider whether the amended complaint satisfies the injury-in-fact requirement. Turning first to the "concrete and particularized" prong, the court concludes that Mejico's allegations are sufficient to withstand Alba's motion to dismiss. "To satisfy that standard, a plaintiff may demonstrate an 'actual' 'invasion of a legally protected interest' that 'affect[s] the plaintiff in a personal and individual way.'" Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 454–55 (4th Cir. 2017) (alteration in original) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 & n.1 (1992)). For example, "a past injury is sufficiently pleaded for purposes of an ADA claim where a disabled individual who requires a wheelchair for mobility alleges that he has personally encountered noncompliant architectural barriers and describes how those barriers caused him harm." Id. at 455 (citing Daniels v. Arcade, L.P., 477 F. App'x 125, 129–30 (4th Cir. 2012)).

According to the amended complaint, Mejico, who is permanently blind and relies on a screen reader to access the internet, visited the Website on several occasions between September of 2019 and May of 2020. During those visits, Mejico encountered a number of specific access barriers that prevented her purchasing items from Alba and otherwise denied her equal access to the goods and services available on the Website. By alleging that Mejico visited the Website, attempted to complete a purchase, and "personally encountered . . . barriers to access," the court is satisfied that the amended complaint "pleads past injuries that are concrete, particularized, and

actual," rather than "conjectural or hypothetical." <u>Nanni</u>, 878 F.3d at 455 (addressing architectural barriers to accessing a store); <u>see also</u> <u>Daniels</u>, 477 F. App'x at 129 (holding that the plaintiff's injury was "'actual' and 'concrete,' rather than theoretical," since "he visited the Market and encountered these [structural] difficulties himself"); <u>Gomez v. Gen. Nutrition Corp.</u>, 323 F. Supp. 3d 1368, 1374 (S.D. Fla. 2018) (noting that the plaintiff "plainly . . . suffered a concrete injury" by "facing barriers to access the Website"); <u>Gniewkowski v. Lettuce Entertain</u> <u>You Enters., Inc.</u>, 251 F. Supp. 3d 908, 913–14 (W.D. Pa. 2017) (finding that "because [Defendant's] website barred Plaintiffs' screen reader software from reading the content of its website, Plaintiffs were unable to conduct on-line research to compare financial services and products" and therefore suffered "an injury-in-fact under Article III of the ADA").

Contrary to Alba's assertions, Mejico need not have purchased a product in the past to have standing to sue under Title III's general prohibition of discrimination. <u>See</u> <u>PGA Tour, Inc.</u> <u>v. Martin</u>, 532 U.S. 661, 679 (2001) (noting that "Title III's broad general rule contains no express 'clients or customers' limitation"); <u>Houston v. Marod Supermarkets, Inc.</u>, 733 F.3d 1323, 1334 (11th Cir. 2013) (concluding that "'bona fide patron' status is not a prerequisite" to obtaining standing to pursue an alleged violation of § 12182(a)). As other courts have recognized, the plain language of § 12182(a) confers on disabled "individual[s]" the right to be free from discrimination "in the full and equal enjoyment of the goods, services, [or] facilities" of a place of public accommodation. 42 U.S.C. § 12182(a); <u>see also</u> <u>Houston</u>, 733 F.3d at 1332. When disabled individuals encounter access barriers that prevent them from fully and equally enjoying a business's goods, services, or facilities, they "suffer[] injury in precisely the form the statute was intended to guard against." <u>Houston</u>, 733 F.3d at 1332 (internal quotation marks and citation omitted); <u>see also</u> <u>Molski v. M.J. Cable, Inc.</u>, 481 F.3d 724, 733 (9th Cir. 2007) ("One

need not be a client or customer of a public accommodation to feel the sting of its discrimination.").

Because Mejico seeks injunctive relief, she "cannot rely <u>solely</u> on past injuries" to establish standing. <u>Marcavage v. City of New York</u>, 689 F.3d 98, 103 (2d Cir. 2012) (emphasis added); <u>see also</u> <u>O'Shea</u>, 414 U.S. at 495–96. Instead, the court must determine whether the amended complaint "sufficiently alleges a likelihood that [Plaintiff] will again suffer such injuries." <u>Nanni</u>, 878 F.3d at 454. For the following reasons, the court concludes that it does.

First, Mejico specifically alleges that she "continues to attempt to utilize the Website and plans to continue to attempt to utilize the Website in the near future for both personal and professional purposes." Am. Compl. ¶ 21. The court "must accept this allegation as true for purposes of the motion to dismiss," <u>Daniels</u>, 477 F. App'x at 130, and the court is satisfied that the amended complaint pleads facts sufficient to render the allegation plausible. Mejico alleges that she regularly uses printed mailing labels for various personal and volunteer tasks and that she "could, and would, use Defendant's Website to aid in these tasks if it were accessible to her." Am. Compl. ¶ 7. Consistent with the Fourth Circuit's decisions in <u>Nanni</u> and <u>Daniels</u>, the court concludes that the denial of equal access to the Website in the past, coupled with Mejico's plausible intentions to utilize the Website in the future, are sufficient to plead a likelihood of future injury.[2] <u>See</u> <u>Nanni</u>, 878 F.3d at 455 (adopting "the <u>Daniels</u> principle—that when an ADA plaintiff has alleged a past injury at a particular location, his plausible intentions to thereafter return to that location are sufficient to demonstrate the likelihood of future injury").

---

[2] This case is clearly distinguishable from <u>Griffin v. Dep't of Labor Fed. Credit Union</u>, in which the Fourth Circuit found that the plaintiff had not demonstrated a plausible intent to return to the defendant credit union's website. 912 F.3d at 656. Whereas Mejico could take advantage of the goods and services offered by Alba if she were able to access the Website, the plaintiff in <u>Griffin</u> was not statutorily eligible for membership in the credit union and therefore was not legally permitted to make use of its benefits. <u>Id.</u> at 652. For those reasons, the Fourth Circuit concluded the plaintiff's complaint did not satisfy the requirements of <u>Nanni</u>. <u>Id.</u> at 656; <u>see also</u> <u>id.</u> (emphasizing that "Nanni could take advantage of the store's wares and accommodations" and that "Griffin, by contrast, is ineligible for perfectly neutral reasons to utilize the Credit Union's services").

Second, neither Mejico's role as a "tester" under the ADA nor her litigation history "strips [her] of standing to sue" Alba.  Nanni, 878 F.3d at 457; see also Houston, 733 F.3d at 1332.  Although tester status alone is insufficient to confer standing, this is not a case in which the plaintiff relies solely on her tester status to establish a threat of future injury.  See Griffin, 912 F.3d at 656 (explaining that the plaintiff's tester status "cannot create standing in the absence of an otherwise plausible assertion that a return to the website would allow [the plaintiff] to avail himself of its services").  Instead, Mejico identifies particular reasons for wanting to access the Website that are separate and apart from her role as a tester.  Thus, even if Mejico's status as a tester fueled her motivation to pursue this action, it does not deprive her of standing.  Nanni, 878 F.3d at 457.

For these reasons, the court concludes that Mejico has sufficiently established at this stage of the proceedings that she has standing to sue.  Accordingly, Alba's motion to dismiss under Rule 12(b)(1) will be denied.

## II.    **Motion for Judgment on the Pleadings**

"To prevail under Title III of the ADA, a plaintiff must show that: (1) [s]he is disabled within the meaning of the ADA; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against [her] because of [her] disability." J.D. v. Colonial Williamsburg Found., 925 F.3d 663, 669–70 (4th Cir. 2019).  In moving for judgment on the pleadings, Alba focuses exclusively on the second element, arguing that the Website is not a "place of public accommodation" subject to Title III.  42 U.S.C. § 12182(a).

As indicated above, Title III prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation" by the owner, lessee, or operator of such a place.  Id.

10

"The phrase 'public accommodation' is defined in terms of 12 extensive categories," <u>PGA Tour</u>, 532 U.S. at 676, including the following:

> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment; [or]
>
> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment[.]

42 U.S.C. § 12181(7).[3]

For purposes of the pending motion, it is undisputed that Alba does not operate a brick-and-mortar store that is open to the public.  Instead, Alba sells its good and services through the Website.  The issue presented—whether a website itself can constitute a place of public accommodation—has not been addressed by the Fourth Circuit.  Other circuit courts have reached differing conclusions regarding the scope of entities subject to Title III.

Based on the types of establishments listed in § 12181(7), the Third, Sixth, and Ninth Circuits have concluded that the term "place of public accommodation" requires "some connection between the good or service complained of and an actual physical place."  <u>Weyer v. Twentieth Century Fox Film Corp.</u>, 198 F.3d 1104, 1114 (9th Cir. 2000); <u>see also</u> <u>Ford v. Schering-Plough Corp.</u>, 145 F.3d 601, 614 (3d Cir. 1998) (finding that the term "public accommodation" does not refer to non-physical access); <u>Parker v. Metro Life Ins. Co.</u>, 121 F.3d 1006, 1014 (6th Cir. 1997) (holding that "a public accommodation is a physical place").  In contrast, the First Circuit has held that the phrase "public accommodation" "is not limited to actual physical structures."  <u>Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.</u>, 37 F.3d 12, 19 (1st Cir. 1994).  The Second and Seventh Circuits have similarly

---

[3] The term "place" is not defined in Title III.

11

interpreted Title III as extending beyond physical locations.  See Morgan v. Joint Admin. Bd., 268 F.3d 456, 459 (7th Cir. 2001) ("The defendant asks us to interpret 'public accommodation' literally, as denoting a physical site, such as a store or a hotel, but we have already rejected that interpretation.  An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store.") (citing Doe v. Mut. of Omaha Ins. Co., 179 F.3d 557, 558–59 (7th Cir. 1999)); Pallozzi v. Allstate Life Ins. Co., 198 F.3d 28, 32 (2d Cir. 1999) ("Title III's mandate that the disabled be accorded 'full and equal enjoyment of the goods, [and] services . . . of any place of public accommodation' suggests . . . that the statute was meant to guarantee them more than mere physical access.") (citation omitted) (first and second alteration in original).

After carefully considering the record, the parties' arguments, and applicable law, the court is persuaded that places of "public accommodation" are not limited to physical, brick-and-mortar establishments and instead include commercial websites that offer good and services. Thus, the fact that Alba has no physical location open to the public is not dispositive and its motion for judgment on the pleadings must be denied.

In reaching this decision, the court agrees with the First Circuit that "the terms [used in § 12187(7)] do not require 'public accommodations' to have physical structures for persons to enter." Carparts, 37 F.3d at 19.  For instance, "[b]y including 'travel service' among the list of services considered 'public accommodations,' Congress clearly contemplated that 'service establishments' include providers of services which do not require a person to physically enter an actual physical structure." Id.  As the First Circuit explained in its 1994 decision,

> Many travel services conduct business by telephone or correspondence without requiring their customers to enter an office in order to obtain their services.  Likewise, one can easily imagine the existence of other service establishments conducting business

> by mail and phone without providing facilities for their customers
> to enter in order to utilize their services.  It would be irrational to
> conclude that persons who enter an office to purchase services are
> protected by the ADA, but persons who purchase the same services
> over the telephone or by mail are not.  Congress could not have
> intended such an absurd result.

Id.

The First Circuit's reasoning applies with equal—if not greater—force in the modern world of e-commerce.  As other courts have recently noted, "we shop in virtual marketplaces for everything from luxuries to necessities," and "we now rely even more on online shopping in the recent pandemic."  Lebamoff Enters. Inc. v. Whitmer, 956 F.3d 863, 875, 878 (6th Cir. 2020) (McKeague, J., concurring); see also McMillan v. Amazon.com, 983 F.3d 194, 196 (5th Cir. 2020) (observing that the "migration of consumer spending online, further compounded by the COVID-19 pandemic, has enabled [Amazon] to make many traditional retailers disappear").  Thus, excluding online retailers and their commercial websites from the reach of Title III "would 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges and advantages, available indiscriminately to other members of the general public.'"  Nat'l Ass'n of the Deaf v. Netflix, Inc., 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (quoting Carparts, 37 F.3d at 20); see also Nat'l Ass'n of the Blind v. Scribd Inc., 97 F. Supp. 3d 565, 575 (D. Vt. 2015) (same).  It would also produce similarly "absurd results."  Andrews v. Blick Art Materials, LLC, 268 F. Supp. 3d 381, 396 (E.D.N.Y. 2017) (internal quotation marks and citation omitted); see also Scribd, 97 F. Supp. 3d at 571 (noting that requiring a connection between the alleged discrimination and a physical place would arguably mean that "a company could freely refuse to sell its goods or services to a disabled person as long as it did so online rather than within the confines of a physical office or store").

The ADA's legislative history further supports the court's conclusion that Title III extends to web-based goods and service providers.  Congressional reports indicate that "[t]he phrase 'public accommodation' . . . 'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety of establishments available to the nondisabled." PGA Tour, 532 U.S. at 676–77 (citing S. Rep. No. 101-116, at 59 (1989); H. R. No. 101-485, pt. 2, at 100) (1990)).  While online retail businesses did not exist when the ADA was enacted and, thus, were not expressly mentioned in § 12187(7), "the legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology" and "did not intend to limit the ADA to the specific examples listed in each category of public accommodations." Netflix, 869 F. Supp. 2d at 200–01 (citation omitted).  Instead, a plaintiff "must show only that the web site falls within a general category listed under the ADA."[4]  Id. at 201 (citations omitted).

Finally, the court is unpersuaded by Alba's contention that "the plain meaning of the word 'place' suggests a physical location."  Def.'s Mem. Supp. Mot. J. Pleadings 5, ECF No. 8. Adopting such a narrow interpretation would contravene the broad remedial purpose of the ADA and its legislative history.  See, e.g., PGA Tour, 532 U.S. at 675–76 (discussing the ADA's "broad mandate," "comprehensive character," and "sweeping purpose," and the legislative history indicating that Title III should be liberally construed) (internal quotation marks omitted). It would also conflict with more recent decisions of the Supreme Court.  As Mejico notes in her

---

[4] Even if the legislative history had not provided significant guidance regarding Congress's intent, the Supreme Court has emphasized there is no "such thing as a 'canon of donut holes,' in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception.  Instead, when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule."  Bostock v. Clayton Cnty., 140 S. Ct. 1731, 1747 (2020) (rejecting the assertion that homosexuality and transgender status are implicitly excluded from the reach of Title VII since they are not specifically included in its list of protected characteristics).

brief in opposition, the Supreme Court has characterized "cyberspace" as "the most important place[] for the exchange of views." Packingham v. North Carolina, 137 S. Ct. 1730, 1735 (2017) (emphasis added).  It has also recognized that "[t]he Internet's prevalence and power have changed the dynamics of the national economy" and that businesses may now "be present in a State in a meaningful way without that presence being physical in the traditional sense of the term." South Dakota v. Wayfair, 138 S. Ct. 2080, 2095, 2097 (2018) (internal quotation marks and citation omitted).  Thus, just as a physical presence requirement "makes no sense" in the context of state tax laws, Id. at 2094, the same is true in the context of the ADA.  See Andrews, 268 F. Supp. 3d at 398 ("Today, internet technology enables individuals to participate actively in their community and engage in commerce from the comfort and convenience of their home.  It would be a cruel irony to adopt the interpretation of the ADA espoused by [the defendant], which would render the legislation intended to emancipate the disabled from the bonds of isolation and segregation obsolete when its objective is increasingly within reach.").

For all of these reasons, the court concludes that places of public accommodation subject to the ADA are not limited to physical, brick-and-mortar establishments and instead include commercial websites that offer good and services to the public. Liberally construing the categories of private establishments listed in Title III, the court is satisfied that the Website qualifies as a "sales or rental establishment" and/or a "service establishment" at this stage of the proceedings.  42 U.S.C. § 12181(7).  Therefore, the court concludes that Mejico has sufficiently alleged that Alba owns or operates a place of public accommodation.  Accordingly, Alba is not entitled to judgment on the pleadings.

15

## <u>Conclusion</u>

For the reasons stated, the court will deny Alba's second motion to dismiss for lack of subject matter jurisdiction and its motion for judgment on the pleadings on the ADA claim.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

DATED: This _25th_ day of January, 2021.

_____
Senior United States District Judge